UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JULIO MENDOZA-MEJIA,<br><br>　　　　　Defendant. | NO: 2:16-CR-159-RMP<br><br>ORDER DENYING MOTION TO DISMISS INDICTMENT |

A pretrial hearing was held in this matter on January 26, 2017. Defendant, who was present and in custody, was represented by Assistant Federal Defender Daniel J. Rubin. Assistant United States Attorney Matthew F. Duggan was present on behalf of the Government. Defendant presented argument regarding his Motion to Dismiss Indictment, ECF No. 20. After the hearing, the Court permitted Defendant to have the benefit of additional briefing. The Court has reviewed the briefing, the record, heard oral argument, and is fully informed.

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 1

Defendant is charged with being an Alien in the United States After Deportation in violation of 18 U.S.C. § 1326, but now challenges the validity of his 2012 deportation. *See* ECF Nos. 1 and 20.

## BACKGROUND

On November 28, 2012, Defendant was provided with a Notice to Appear in front of an Immigration Judge (IJ) to answer to the charge that he was then "an alien present in the U.S. who has not been admitted or paroled." ECF No. 20 at 15. Defendant appeared before the IJ on December 11, 2012, as part of group removal proceedings and communicated with the assistance of a Spanish interpreter. *Id*. at 2. As confirmed by the audio recording of the hearing, Defendant was advised of his right to hire an attorney, he was provided with a list of attorneys who were willing to assist at little to no cost, and he was asked if he would like time to secure legal representation. Defendant waived his right to an attorney and confirmed that he would represent himself.

Defendant answered a series of questions about his circumstances, admitting that he was a citizen of Mexico, but stating that he had two young children who are U.S. citizens. The prosecutor alleged that Defendant had been convicted for possession of cocaine, a conviction that Defendant now alleges does not exist, and for a DUI. However, when asked if he had been convicted of possessing cocaine, Defendant stated that he had.

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 2

1  The IJ found Defendant ineligible for cancellation of removal and denied
2  him voluntary departure as a matter of discretion.  Subsequently, she ordered that
3  Defendant be deported.  The IJ asked Defendant if he would like to appeal her
4  ruling to a higher court, and he unambiguously stated, "No."  Defendant now
5  challenges that deportation order.

## ANALYSIS

A defendant charged with violating 8 U.S.C. § 1326 may not challenge the validity of the underlying deportation order unless he demonstrates that "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.  8 U.S.C. § 1326(d).

Defendant did not appeal his 2012 removal, and, as discussed in further detail below, there is no basis to invalidate Defendant's explicit waiver of his right to do so.  Therefore, as Defendant fails to clear the first of three statutory hurdles, the Court need not proceed further.  However, as Defendant raises the issue of the validity of his appeal waiver, the Court addresses his other due process challenges.

In order to succeed in his challenge to the underlying removal proceedings, Defendant must demonstrate that "(1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 3

2000) (internal quotations and citation omitted). In order to demonstrate prejudice, Defendant need not show that he would have obtained relief; "he must only show that he had a 'plausible' ground for relief from deportation." *Id*.

Defendant raises three grounds to support a finding that his deportation was "fundamentally unfair":

> First, the IJ never obtained a knowing, intelligent, and voluntary waiver of the right to counsel. Second, the IJ failed to advise Mr. Mendoza-Mejia of his apparent eligibility for relief from removal. And, third, even though the IJ advised Mr. Mendoza-Mejia of his right to appeal she failed to determine whether his purported waiver was constitutionally sound.

ECF No. 20 at 8.

**Waiver of Counsel**

Defendant argues that his waiver of counsel failed to suffice pursuant to the Fifth Amendment to the United States Constitution. ECF No. 20 at 5-6. "Although there is no Sixth Amendment right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal proceedings." *United States v. Ramos*, 623 F.3d 672, 682 (9th Cir. 2010) (quoting *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004).

> "Although IJs may not be required to undertake Herculean efforts to afford the right to counsel, at a minimum they must [ (1) ] inquire whether the petitioner wishes counsel, [ (2) ] determine a reasonable period for obtaining counsel, and [ (3) ] assess whether any waiver of counsel is knowing and voluntary."

*Id*. (internal citations and quotations omitted).

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 4

The audio recording of the deportation proceeding demonstrates that Defendant was advised of his right to counsel, was provided with a list of attorneys who were willing to provide services at little to no charge, was asked if he wanted an attorney, and asked if he wanted additional time to find an attorney. Defendant unequivocally responded that he would represent himself, and the IJ found that Defendant knowingly waived his right to have an attorney.

Despite Defendant's explicit waiver of counsel, defense counsel relies on Defendant's comment later on in the proceedings when he asked for a "bond" as evidence that he didn't understand the proceedings. ECF No. 20 at 9. Defense counsel argues that "[a]t this point, the IJ was clearly on notice that Mr. Mendoza-Mejia did not understand his legal rights and should have understood Mr. Mendoza-Mejia's waiver of counsel was not knowing and voluntary and should have discussed with Mr. Mendoza-Mejia again the option of him hiring a lawyer." *Id*. The IJ responded to Defendant that they were beyond that point, and reminded him that she had previously asked him if he had questions and whether Defendant wanted to represent himself.

The Court finds that Defendant made an unequivocal waiver of counsel, despite his inquiry regarding bond. There is no obligation for an IJ to ask the same questions to double-check if a defendant wants counsel due to a request like the one Defendant made at his hearing. Defendant's request for a bond did nothing to

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 5

vitiate his statement that he would represent himself during the removal proceedings.

**Alleged Failure to Advise Defendant of "Apparent Eligibility" for Relief**

Defendant argues that he should have been advised of different avenues of relief from removal. ECF No. 20 at 10. Defendant states that he was eligible for two separate forms of relief: cancellation of removal and voluntary departure, but was denied both due to the IJ's erroneous reliance on a conviction for possession of cocaine that did not exist. *Id.* at 10-11. However, the IJ is recorded as stating the requirements for both types of relief that Defendant now asserts he was improperly denied.

In order to be eligible for cancellation of removal, Defendant must

> (A) ha[ve] been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
> (B) ha[ve] been a person of good moral character during such period;
> (C) ha[ve] not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
> (D) establish[] that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b). A review of the evidence submitted by Defendant demonstrates that he was returned to Mexico in 2008, which the Court found relevant to the first prerequisite to eligibility for cancellation of removal.

Defendant argues that he was turned around at the border, but was not subject to a more formal administrative voluntary departure process, so the Court

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 6

should find that his continuous physical presence should not have been interrupted by his brief return to Mexico in 2008. *See* ECF No. 30. In his supplemental motion, defense counsel correctly cites Ninth Circuit law for the proposition that "being turned away at the border by immigration officials does not have the same effect as an administrative voluntary departure and does not itself interrupt the accrual of an alien's continuous physical presence." *Tapia v. Gonzales*, 430 F.3d 997, 998 (9th Cir. 2005). Defendant also submitted a declaration stating that he was only subjected to a turnaround at the border in 2008. ECF No. 30 at 6.

The Government responded with additional briefing to argue that an administrative voluntary departure under threat of coerced deportation breaks an alien's continuous presence for purposes of the ten-year physical presence requirement. *See* ECF No. 31.

Although both parties accurately state relevant law, it is unclear whether Defendant in this matter was subject to an administrative voluntary departure process or was simply turned around at the border. Even accepting Defendant's declaration as true, Defendant still fails to prove that he could meet all of the remaining requirements for cancellation of removal.

Defendant had the opportunity and did tell the IJ that he has two children who are citizens of the United States, but he failed to demonstrate that his removal to Mexico would cause "exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 7

admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D). Defendant argues that simply because he has two children, "one would reasonably infer that he is one of two providers (both financial and emotional) for those US citizen children." ECF No. 25 at 2. However, the documents provided by Defendant reflect that he was unemployed in 2012 and that his two children lived with their mother. *See* ECF No. 20 at 34-35. Defendant now declares that he has had various jobs during his time in the United States, and that he was the main financial provider for his children in 2012. *Id*. at 41. Even if the Court accepts these unsupported statements as true, Defendant fails to demonstrate even the ordinary hardships imposed by routine deportations, much less "exceptional and extremely unusual hardship to the alien's spouse, parent, or child." *See United States v. Arce-Hernandez*, 163 F.3d 559, 564 (9th Cir. 1998), *as amended on denial of reh'g* (Mar. 11, 1999).

Therefore, although the IJ relied on a non-existent conviction to deny cancellation of removal, Defendant was not prejudiced by that error because he would not have been qualified for cancellation in any case. The Court finds that is not plausible that Defendant would have been found eligible for cancellation of removal based on the evidence presented to the IJ and to this Court.

Defendant also argues that he was eligible for voluntary departure. Pursuant to 8 U.S.C. § 1229c(c), "[t]he Attorney General shall not permit an alien to depart voluntarily under this section if the alien was previously permitted to so

depart after having been found inadmissible under section 1182(a)(6)(A)[1] of this title."  Although it appears Defendant may have been eligible for voluntary departure (if the Court accepts Defendant's contention that he has not previously benefitted from that relief in 2008), the IJ explicitly stated that she denied Defendant voluntary departure as a matter of discretion.  In doing so, the IJ relied on more than just the non-existent conviction for possession of cocaine; the IJ also referenced Defendant's recent immigration history and his conviction for driving under the influence.

The record is incomplete as to whether the IJ would have exercised her discretion in Defendant's favor if she had considered only his DUI conviction and recent immigration history. In any case, the Court need not make that determination, because, as set out in greater detail below, Defendant waived his right to appeal the IJ's order.

**Waiver of Right to Appeal**

> [A]n alien is barred from collaterally attacking an underlying deportation order "if he validly waived the right to appeal that order" during the deportation proceedings. [*U.S. v.*] *Arrieta*, 224 F.3d at 1079, citing *United States v. Estrada–Torres*, 179 F.3d 776, 780–81 (9th Cir. 1999). "In order for the waiver to be valid, however, it must be both 'considered and intelligent.'" *Arrieta*, 224 F.3d at 1079, citing *United States v. Mendoza–Lopez*, 481 U.S. 828, 840 [] (1987).  Such a waiver is not "considered and intelligent" when "the record contains an inference that the petitioner is eligible for relief from deportation," but the Immigration Judge fails to "advise the alien of this possibility and

---

[1] This statute references "Aliens present without admission or parole."

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 9

give him the opportunity to develop the issue." *Arrieta*, 224 F.3d at 1079, quoting *Moran–Enriquez v. INS*, 884 F.2d 420, 422–23 (9th Cir. 1989).

*United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001).

Defendant was advised about the prerequisites to the relief he argues he was entitled to receive, was asked if he was married, when he arrived in the United States, and was asked about his children.  Accordingly, he was advised of various avenues of relief and was given an opportunity to provide relevant information before the IJ made her decision.

At the end of the 2012 deportation proceeding, the IJ asked Defendant if he would like to appeal her ruling to a higher court, and he unequivocally stated, "No."  Defendant again relies upon his vague request for a "bond" as evidence that he didn't understand the proceedings, and argues that

> [w]ithin a minute of his request the IJ had told him that ship had sailed, rejected voluntary departure and asked if he wanted to appeal to which he responded no [sic].  All of that happening in the course of one minute clearly indicates that Mr. Mendoza-Mejia did not understand his appeal rights.

ECF No. 20 at 13.  The fact that Defendant responded quickly that he did not want to appeal the ruling, even if he made an inapposite request immediately before doing so, does not vitiate the validity of his waiver.

Based on the foregoing, the Court finds that Defendant is foreclosed from challenging the 2012 deportation order that serves as a basis for his current charge.

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 10

1  Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to

2  Dismiss Indictment, **ECF No. 20**, is **DENIED**.

3  The District Court Clerk is directed to enter this Order and provide copies to

4  counsel.

5  **DATED** February 6, 2017.

6

7  *s/ Rosanna Malouf Peterson*
   ROSANNA MALOUF PETERSON
   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 11